UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN M. HACKETT, | ) | |
| | ) | CIV. 06-5040 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S |
| STANDARD INSURANCE | ) | SECOND MOTION TO COMPEL |
| COMPANY, | ) | DISCOVERY [DOCKET 69] |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

This matter comes before the court pursuant to plaintiff Kathleen M. Hackett's second motion seeking an order compelling defendant Standard Insurance Company (hereinafter "Standard") to disclose documents showing whether management checks imposed penalties for inaccurate decision making; information concerning penalties imposed against Standard employees for inaccurate decision making; personnel files of Standard claims adjusters who made decisions regarding Ms. Hackett's claim; files on Drs. Zivin and Dickerman and any evaluations made by Standard of the doctors' work; and the number of times Dr. Zivin and Dr. Dickerman each made decisions either supporting or denying the allowance of disability benefits under the "any occupation" standard under the ERISA benefit plan issued by Standard.

[Docket 69]. Ms. Hackett represents to the court that she has made a good faith effort to resolve this matter without the court's intervention, but to no avail. Id. The district court referred the motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A). [Docket 72].

**FACTS AND PROCEDURAL HISTORY**

The court will limit its factual recitation to those facts relevant to the present discovery dispute. Ms. Hackett brought suit in this court against Standard Insurance Company (Standard), alleging that Standard wrongfully denied her claim for long-term disability benefits under the group disability insurance policy issued to Ms. Hackett's former employer, Mileage Plus, Inc. (MPI), and which covered Ms. Hackett. See Docket No. 1. Ms. Hackett and Standard both moved for summary judgment. See Docket Nos. 26, 41. The United States District Court for the District of South Dakota granted summary judgment for Standard. Docket No. 56. The district court applied Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998) to hold that, although Standard operated under a conflict of interest, the court could not consider the conflict of interest in reviewing the lawfulness of Standard's decision to deny benefits to Ms. Hackett because Hackett failed to present "evidence to suggest that any potential funding conflict of interest caused a serious breach of a fiduciary duty." Docket No. 56 (quoting Woo, 144 F.3d at 1161-62). Accordingly, under

Woo, the district court concluded that Standard did not abuse its discretion in denying Hackett's claim. Ms. Hackett appealed.

The Eighth Circuit Court of Appeals reversed the district court's decision and remanded for reconsideration of the conflict of interest, citing the Supreme Court's intervening decision in Metropolitan Life Insurance Co. v. Glenn, ___ U.S. ___, 128 S.Ct. 2343 (2008), which changed the law as to how a conflict of interest should " 'be taken into account on judicial review of a discretionary benefit determination.' " Hackett v. Standard Ins. Co., 559 F.3d 825, 830 (8th Cir. 2009) (quoting MetLife v. Glenn, ___ U.S. ___, 128 S.Ct. 1117 (2008)).

In Glenn, the Court held that a conflict of interest exists whenever the plan administrator is the employer or insurance company which "both funds the plan and evaluates the claims." Glenn, 128 S.Ct. at 2348. The Glenn Court concluded that a conflict of interest should be one of the factors considered on judicial review as to whether an abuse of discretion existed. Id. at 2350. The Court emphasized that its decision did not warrant a change in the standard of review to be applied by the district court. Instead, the Court said that principles of trust law apply to judicial review of benefits denials, requiring the district court to "apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion."

Id. Glenn mandated that the reviewing court employ a "combination-of-factors method of review," under which "the conflict of interest serves as a tiebreaker where other factors are closely balanced." Id. at 2351. The Court said the conflict of interest:

> should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. (Internal citation omitted).

Because the district court understandably failed to consider Standard's conflict of interest when it evaluated Standard's decision with respect to Ms. Hackett, the Court of Appeals reversed and remanded to allow the district court to "reconsider its decision in light of Glenn." Hackett, 559 F.3d at 830.

## DISCUSSION

**A.   Whether the Information Sought is Discoverable**

   **1.   Scope of Discovery Under Rule 26**

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

4

regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. … In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the

> pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

6

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." See Fed. R. Civ. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

**B.     The Appropriate Standard of Review is a Deferential "Combination of All Factors" Standard**

Where the district court reviews a plan administrator's denial of benefits under ERISA, the applicable standard of review is *de novo* unless the terms of the plan " 'giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " Aetna

Health Inc. v. Davila, 542 U.S. 200, 210 (2004) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Where the plan gives discretion to the plan administrator, the administrator's decision is reviewed for abuse of discretion.  Firestone, 489 U.S. at 115.

In 2008, following the district court's ruling in the present case, the Supreme Court decided Metropolitan Life Ins. Co. v. Glenn, and considered whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations. Glenn, 128 S.Ct. at 2347.  The Court also set forth the method under which any such conflict of interest should be considered on judicial review of a discretionary benefits decision.  Id.

The Court found that a plan administrator acting in such dual roles is subject to a conflict of interest, and must weigh the conflict as a " 'factor in determining whether there is an abuse of discretion.' "  Glenn, 128 S.Ct. at 2350 (quoting Firestone, 489 U.S. at 115; and Restatement (Second) of Trusts § 187, cmt. d.).  However, the Court did not adopt a rule whereby the reviewing court must always apply a less deferential standard of review in conflict of interest cases.  Instead, the Court adopted a "combination-of-factors method of review."  Glenn, 128 S.Ct. at 2351.  The Court explained that the proper method of judicial review of benefits denial cases takes into account "several different, often case-specific, factors, reaching a result by weighing all

8

together," and noted that a conflict of interest is an appropriate factor for consideration. Id. at 2351. Accordingly, although Glenn did not change the standard of review for discretionary benefits decision cases, the district court may consider a conflict of interest in evaluating the proper amount of deference to be given to a plan administrator's decision.

Where the district court reviews a benefits denial case, then, a conflict of interest can "act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." Id. at 2351. The Glenn Court said that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." Id. The Court also noted that a conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id.

Thus, Glenn sets forth the legal rubric under which the district court should consider Ms. Hackett's claim, and demonstrates how the conflict of interest stipulated to by the parties here should be considered.

**C.      Whether Glenn Changed the Law of Discovery in ERISA Cases**

Although the parties agree that Glenn applies, and that a conflict of interest exists as to Standard's dual roles as payor of benefits and administrator deciding whether benefits are paid, the parties disagree as to whether Glenn changed the laws of discovery in an ERISA benefits case. Ms. Hackett argues that Glenn changed the landscape for ERISA discovery, and that "the deference due insurance companies . . . did not survive Glenn," see Docket No. 70, while Standard argues that Glenn "did not create new evidentiary rules or overrule existing circuit law relating to ERISA discovery. See Docket No. 71. The ERISA statute itself does not address the matter of discovery. See Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

Courts that have considered ERISA discovery disputes following Glenn have split. Some courts have allowed varying degrees of discovery. See e.g., Sanders v. Unum Life Ins. Co. of N. Am., No. 4:08 CV 421 JLH, 2008 WL 4493043, at *4 (E.D. Ark. Oct.2, 2008) (permitting discovery relating to any financial incentives anyone might have had to deny plaintiff's claim); Achorn v. Prudential Ins. Co. of Am., No. 1:08 CV 125 JAW, 2008 WL 4427159, at *6 (D.

10

Me. Sept.25, 2008) (permitting discovery of, among other things, the amount and rate of compensation paid to third-party firms that reviewed plaintiff's claim for benefits); <u>Burgio v. Prudential Life Ins. Co. of Am.</u>, ___ F.R.D. ___, No. 06 CV 6793(JS)(AKT), 2008 WL 4376241, at *18 (E.D.N.Y. Sept. 24, 2008) (allowing one deposition, and permitting discovery of, among other things, information relating to the compensation or awards paid to individuals involved in the denial of plaintiff's claim for benefits); <u>Myers v. Prudential Ins. Co. of Am.</u>, ___ F.Supp.2d ___, No. 1:08 CV 22, 2008 WL 4569969, at *10 (E.D. Tenn. Sept.22, 2008) (expressing an inclination to permit discovery of bonus or reward programs for employees reviewing disability claims, the identity of a physician's employer, and the financial relationship between that employer and the plan administrator); <u>Garg v. Winterthur Life</u>, ___ F.Supp.2d ___, No. 07 CV 510(ADS)(AKT), 2008 WL 4004960, at *8 (E.D.N.Y. Aug. 26, 2008) (permitting discovery relating to whether the administrator had a conflict of interest, and whether that conflict influenced its decision); <u>Hogan-Cross v. Metro. Life Ins. Co.</u>, 568 F.Supp.2d 410, 414 (S.D.N.Y.2008) (permitting discovery relating to the compensation paid to employees and outside consultants involved in denying plaintiff's claim for benefits).

Other courts have not permitted additional discovery after <u>Glenn</u>. <u>See e.g.</u>, <u>Christie v. MBNA Long Term Disability Plan</u>, No. 1:08 CV 44 JAW, 2008 WL 4427192, at *1, *3 (D. Me. Sept.25, 2008) (denying plaintiff's motion for

discovery of the administrator's internal policies and procedures, incentive programs, and structures for "walling off" claims handlers); Marszalek v. Marszalek & Marszalek Plan, No. 06 C 3558, 2008 WL 4006765, at *2 (N.D. Ill. Aug.26, 2008) (rejecting plaintiff's request to allow any discovery in an ERISA case); Singleton v. Hartford Life & Accident Ins. Co., No. 4:08 CV 361 WRW, 2008 WL 3978680, at *1, *1 n. 2 (E.D. Ark. July 29, 2008) (denying plaintiff's motion for production of documents that described performance awards, incentives, and bonuses for employees involved in plaintiff's claim); Florczyk v. Metro. Life Ins. Co., No. 5:06 CV 309 GHL, 2008 WL 3876096, at *3 (N.D.N.Y. July 11, 2008) (rejecting plaintiff's request for discovery of administrator's claims handling procedures, internal training materials, bonus and incentive plans, and internal structure).

In this case, the court believes Glenn permits limited discovery. The court agrees with the United States District Court for the Eastern District of Missouri, which held that, "a conflict . . . cannot be considered in a vacuum. Discovery is required to explore the nature and extent of the purported conflict . . . at issue." Sampson v. Prudential Ins. Co. of America, No. 08-1290, 2009 WL 882407, at *2 (E.D. Mo. March 26, 2009)(recognizing the court's obligation to apply Glenn and ordering limited discovery beyond the administrative record). Prior to Glenn, the issue of a conflict of interest did not assume the same importance in determining an insured's claim as it does post-Glenn.

12

Thus, plaintiffs may not have been motivated pre-<u>Glenn</u> (because the legal significance was lacking), to fully explore all angles of a conflict of interest, whereas post-<u>Glenn</u>, a plaintiff would be prudent to engage in such exploration.

**D.     Application of <u>Glenn</u> to Plaintiff's Discovery Requests**

    **1.     Plaintiff's Interrogatories 1 - 6**

Here, Ms. Hackett makes limited discovery requests which go to the heart of the conflict of interest issue.  Although the parties agree that the conflict of interest exists, the district court needs more information at its disposal in order to properly evaluate the nature and extent of the conflict. Central to that inquiry would be the information requested by Ms. Hackett as to whether Standard "has taken active steps to reduce potential bias and to promote accuracy, . . ., by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." <u>Glenn</u>, 128 S.Ct. at 2351.  Ms. Hackett's first six interrogatories go to the narrow example specifically set forth in <u>Glenn</u>.  It would be illogical to place the new <u>Glenn</u> analysis into issue and concomitantly deny Ms. Hackett the opportunity to explore, through her discovery requests, information explicitly illustrated by the Supreme Court as a suitable method of weighing a conflict of

13

interest in a discretionary benefits decision case. Thus, Ms. Hackett's request for discovery in Interrogatories 1 through 6 is granted.

### 2. Plaintiff's Interrogatory 7

Ms. Hackett's seventh interrogatory requests that Standard produce the personnel files of the claims adjusters who made decisions with respect to Ms. Hackett's claim. Here, the court agrees with Standard that these personnel files do not directly pertain to the conflict of interest inherent in Standard's evaluation of Ms. Hackett's claim. See Myers v. Prudential Ins. Co. of Am., 581 F. Supp. 2d 904, (E.D. Tenn. 2008). The advisory committee's note following Rule 26(b)(1) provides that information is discoverable only if relevant to the claims or defenses of the case, and that relevancy is to be broadly construed for discovery purposes. See Fed. R. Civ. P. 26(b)(1) advisory committee's note. However, this court believes the scope of discovery in the instant case is properly limited to the district court's determination whether an abuse of discretion existed, and that Ms. Hackett has not made a sufficient showing that the personnel files are likely to contain information that is specifically relevant to the conflict of interest.

Ms. Hackett points to a case from this District in which personnel files demonstrated that an insurance company paid bonuses to its employees who helped reduce the previous year's claims payouts. See Torres v. Travelers Ins. Co., Civ. 01-5056, Docket No. 327, at 29 (D.S.D, 2004). However, the discovery

in Torres went to the merits of the case, which involved allegations of bad faith on the part of the insurance company, and the court considered the information in personnel files as part of an inquiry into the degree of reprehensibility of the defendant insurance company in expressly denying that it engaged in a claims incentive program. The instant case is limited to a review of the benefits decision in light of Glenn and a weighing of the nature and extent of the conflict of interest. The purpose of the limited discovery authorized by Glenn is not to reopen all discovery, and Ms. Hackett has not made a sufficient showing beyond mere speculation that the personnel records will contain information that is helpful to weighing the conflict of interest. See E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 (D. Neb. March 15, 2007) (citing Cervantes v. Time, Inc., 464 F.2d 986, 994( 8th Cir. 1972)).

Moreover, the court is bound to limit the extent of discovery permitted by the Federal Rules "where the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. Pro. 26(b)(2)(c); Roberts, 352 F.3d at 361. Here, it is likely Ms. Hackett's request exceeds its likely benefit, given the current disposition of the case and the district court's duty merely to weigh the nature and extent of the conflict of interest. Moreover, personnel files may contain particularly sensitive information, and redaction alone may not cure the sensitive quality of the information which would be irretrievably

15

revealed upon discovery. For these reasons, Ms. Hackett's request to compel production of personnel files is denied.

### 3. Plaintiff's Interrogatory 8

Pursuant to Interrogatory number eight, Ms. Hackett requests the complete personnel files of both Dr. Zivin and Dr. Dickerman, plus records of all evaluations made by Standard of any work performed by the doctors as to any insured over the course of the last nine years. The court believes that this request goes "too far afield," and denies Ms. Hackett's request for discovery as to these items. Fischer v. Life Ins. Co. of N. Am., No. 1:08-CV-0396-WTL-TAB, 2009 WL 734705, at *5 (S.D. Ind. March 19, 2009).

Like the personnel files of Standard's claims adjusters, the personnel files of Drs. Zivin and Dickerman are likely to contain sensitive information, the nature of which cannot be cured by redaction of any kind. The files requested by Ms. Hackett would obviously not be limited to information related to her claim alone, but would implicate the privacy rights of numerous individuals. The court is not convinced that redaction of names and other identifying information goes far enough to protect the likely sensitive information contained in files unrelated to Ms. Hackett's claim, and the burden of copying, reviewing, redacting, and taking other protective measures as to nine years of personnel files and evaluations likely outweighs its likely benefit, given the

district court's narrow focus on weighing the conflict of interest as it pertained to Standard's benefits decision as to Ms. Hackett. Fed. R. Civ. P. 26(b)(2)(C).

Moreover, the entire personnel files of the respective doctors cannot be said to be directly relevant to the conflict of interest issue. Although Glenn did not purport to provide an exhaustive list of factors to be considered by the court in reviewing a benefits denial, nowhere did the Court allude to the district court opening up discovery to permit new acquisition of nearly a decade of personnel files and evaluations. See generally Glenn, 128 S.Ct. 2343 (2008). Presumably, nine years of files, concerning potentially hundreds of claimants, contain far more than what is necessary for the district court to properly determine the amount of deference to give to Standard's decision with respect to Ms. Hackett alone.

While all discovery is a fishing expedition of sorts, "the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water." Myers v. Prudential Ins. Co. of Am., 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008). The court believes that the district court can adequately weigh the nature and extent of the conflict of interest at play here by evaluating the discovery granted as to Ms. Hackett's first six Interrogatories.

### 4. Plaintiff's Interrogatories 9 - 12

Because Ms. Hackett's ninth through twelfth discovery requests are focused, are limited in scope to a time frame of two years, and raise no apparent third-party privacy issues, the court grants her requests for information as to the respective numbers of times Dr. Zivin and Dr. Dickerman supported denial or allowance of disability benefits from 2003 to 2005. The court agrees with Ms. Hackett that these final discovery requests will be helpful to the district court in determining the extent of the conflict on interest inherent in Standards' dual roles as plan administrator and payor of benefits, and in determining the amount of deference to be given to Standard's denial of benefits. In permitting Ms. Hackett's discovery requests as to these four interrogatories, the court believes the scope of discovery is appropriately tailored to the district court's narrow duty to reconsider its decision in light of Glenn, and properly limited as envisioned by the advisory committee's note following Rule 26. See Fed. R. Civ. P. 26(b)(1) advisory committee's note ("When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.").

## CONCLUSION

The court hereby

ORDERS that Ms. Hackett's second motion to compel [Docket 69] shall be granted in part and denied in part in accordance with the above opinion.

**NOTICE TO PARTIES**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated September 21, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE