UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

_____

| | |
|---|---|
| Kathleen M. Hackett, | Civ. 06-5040-JLV |
| Plaintiff, | |
| v. | **DEFENDANT'S OBJECTION TO MAGISTRATE'S ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL** |
| Standard Insurance Company, | |
| Defendant. | |

_____

## INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1)(A), Defendant Standard Insurance Company ("Standard") respectfully submits this Objection to United States Magistrate Judge Veronica L. Duffy's September 21, 2009 Order Granting in Part and Denying in Part Plaintiff Kathleen M. Hackett's ("Plaintiff") Second Motion to Compel Discovery. [Docket No. 74]. For the reasons provided herein and in Standard's Memorandum in Opposition to Plaintiff's Second Motion to Compel Discovery [Docket No. 71], the Court should reject that portion of the Order wherein the Magistrate grants Plaintiff's request for discovery through Interrogatories 1-6 and 9-12.[1] Because the discovery is redundant, irrelevant and in many cases extremely burdensome, Standard should not be compelled to produce this information.

---

[1] The discovery requests at issue in Plaintiff's Second Motion to Compel include both Interrogatories and Requests for Production; however, the Magistrate's Order refers to the requests as "Interrogatories." For consistency, Standard will also refer to the discovery requests as Interrogatories.

## **DISCOVERY REQUESTS**

1. Did you impose management checks that penalize inaccurate decisionmaking, regardless of whom the inaccuracy benefits, which applied to Kathleen Hackett's claim?

2. Produce all documents which evidence whether you imposed management checks that penalize inaccurate decisionmaking, regardless of whom the inaccuracy benefits, which applied to Kathleen Hackett's claim.

3. Since 2000, have you penalized any employee for making an inaccurate decision that favors Standard?

4. Produce all documents which evidence any penalty you have imposed since 2000 on any employee for making an inaccurate decision that favors Standard.

5. Since 2000, have you penalized any employee for making an inaccurate decision that favors Standard?

6. Produce all documents which evidence any penalty you have imposed since 2000 on any employee for making an inaccurate decision that favors an insured.

. . .

9. From 2003 to 2005, how many times did Dr. Zivin provide an opinion supporting denial of disability benefits under the "any occupation" standard?

10. From 2003 to 2005, how many times did Dr. Zivin provide an opinion supporting allowance of disability benefits under the "any occupation" standard?

11. From 2003 to 2005, how many times did Dr. Dickerman provide an opinion supporting denial of disability benefits under the "any occupation" standard?

12. From 2003 to 2005, how many times did Dr. Dickerman provide an opinion supporting allowance of disability benefits under the "any occupation" standard?

In the present case, the Magistrate made an error of law in requiring Standard to provide responses to the foregoing discovery. First, the Magistrate declined to address, far less consider, the posture of the case, i.e., remand from Eighth Circuit Court of Appeals with instructions for Court to review Standard's benefits decision in light of <u>Glenn</u>. Second, the Magistrate erred in determining that this discovery is relevant and permissible under ERISA. Finally, the Magistrate

failed to consider the substantial burdensome on Standard in attempting to provide a response. For these reasons, the Magistrate's Order should be reversed or modified.

## ARGUMENT

**I.  The Magistrate Ignored the Posture of the Case in Ordering Discovery.**

Plaintiff served discovery requests on Standard after remand to the Court for reconsideration of its decision in light of the Supreme Court's decision in <u>Metro. Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2434 (2008). At the time the discovery was served, and indeed, up to the point in time the Magistrate issued her decision directing Standard to provide responses, there was no basis for the parties to engage in discovery. Discovery had closed in the case on December 1, 2006. The remand from the Eighth Circuit Court of Appeals did not indicate that additional discovery was warranted or necessary. Plaintiff did not bring a motion to reopen discovery or otherwise seek permission to open the administrative record. As such, Standard was given little opportunity to address the merits of the broad discovery Plaintiff served. The Magistrate should have required Plaintiff to obtain leave to conduct additional discovery in the first instance, and then argue why she was entitled to these broad requests.

**II.  The Requested Discovery is Cumulative and Irrelevant Given the Presumed Conflict.**

The Magistrate granted Plaintiff discovery on the basis that "the issue of a conflict of interest did not assume the same importance in determining an insured's claim as it does post-<u>Glenn</u>." Docket No. 74, p. 12 (citing <u>Metro. Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2434 (2008)). However, this rationale misconstrues the holding in <u>Glenn</u> and its departure from prior conflict of interest jurisprudence in the ERISA context.

Prior to <u>Glenn</u>, a plaintiff had the burden of demonstrating that an administrator's financial conflict of interest was causally connected to the specific decision at issue in order to trigger a less-deferential standard of review. See <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157, 1160 (8th Cir. 1998). <u>Glenn</u> alleviated this evidentiary burden by presuming a financial conflict of interest in all situations where an administrator would have to pay any successful claim for benefits with its own funds. 128 S. Ct. at 2346. Post <u>Glenn</u> courts in the Eighth Circuit have generally denied discovery outside the administrative record. <u>Samuel v. Citibank, N.A.</u>, Civ. 07-4051, 2008 WL 4138174 (D.S.D. 2008) (after <u>Glenn</u>, claimant not entitled to discovery outside of administrative record); <u>Sanders v. Unum Life Ins. Co. of Am.</u>, 2008 Wl 4493043, *3 (E.D. Ark. 2008) (in declining to permit discovery under abuse of discretion standard, court notes that "[i]t is difficult to see why the holding in <u>Glenn</u> would justify opening the door to full discovery under the Federal Rules of Civil Procedure when the one factor that <u>Glenn</u> says may be taken into account is evident from the face of the record.").

Other post-<u>Glenn</u> decisions have recognized the extraneousness of discovery on the presumed financial conflict:

> The trouble here is, [plaintiff] already has the benefit of this structural conflict and she has done nothing to articulate why that factor would be any weightier if Prudential does not formally "wall off" claims administrators from its financial managers. In my view, unassisted by any argument of counsel, the mere absence of special or affirmative measures to wall off claim administrators from overall financial performance concerns, in and of itself, does not establish any <u>enhanced</u> conflict or bias, only the ordinary structural conflict that is already factored into the case. Nor does [plaintiff's] presentation concerning bonus and incentive programs suggest to me how the standard of review might change depending on what she discovered. For example, if discovery revealed that claims handlers received incentives for "closing claims files," would that mean that [plaintiff] would be entitled to benefits under the plan no matter what the record demonstrated on the merits? I

> presume not. And as to any specific item of evidence in the record, would the existence of such an incentive have any tendency to make that evidence immaterial or less weighty?

Christie v. MBNA Group Long Term Disability Plan, 2008 U.S. Dist. LEXIS 73835, *8-9 (D. Me. Sept. 25, 2008).

Here, Plaintiff's Interrogatories seek evidence of a financial conflict by requesting information on employee and consultant decision-making, see Interrogatories 9-12, and Standard's evaluation of the resulting decisions, not only in this case, see Interrogatories 1-2, but in all benefits decisions since 2000. See Interrogatories 3-6. These discovery requests are cumulative in light of the presumed conflict, and responses thereto would do nothing to alter this Court's task on remand, which is limited to considering the presumed conflict as a factor in evaluating the decision to discontinue payment of disability benefits. See Hackett v. Standard Ins. Co., 559 F.3d 825, 830 (8th Cir. 2009) ("Because the district court failed to consider the conflict when it evaluated the plan administrator's decision, we reverse and remand, thereby allowing the district court to reconsider its decision in light of Glenn."); see also Alliance Comm. Co-op, Inc. v. Golden W. Telecomm. Co-op, Inc., 2009 WL 512023, *6 (D.S.D. Feb. 27, 2009) (recognizing that "Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative[.]").

Further, the Interrogatories permitted under the Magistrate's Order are irrelevant as they relate to general benefit decision-making or unrelated claim decisions. See, e.g., Interrogatory No. 9 ("From 2003 to 2005, how many times did Dr. Zivin provide an opinion supporting denial of disability benefits under the "any occupation" standard?"). The information resulting from these Interrogatories would lack the necessary context, specificity, and typicality to be relevant, and such generic discovery requests run counter to Glenn's recognition that "benefits decisions

arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts" to be analyzed in a one-size-fits-all manner. 128 S. Ct. at 2351.

For example, the number of times Dr. Zivin has rendered a decision "supporting a denial" of benefits in "any occupation" claim cannot assist the Court in determining the significance of Standard's structural conflict of interest. Dr. Zivin's opinion would have to be considered in light of the circumstances of the particular claim. To the extent Dr. Zivin's opinion is accurate and consistent with the medical and other information in the claim file, the fact that it supports a claim denial or closure would not be evidence of bias or conflict. Moreover, this interrogatory also presupposes that consultants "support" decisions granting or denying benefits. In reality, consultants generally comment on whether medical evidence supports a diagnosis or occupational restrictions and limitations; the claims analyst ultimately determines whether benefits should be provided depending on a variety of factors. See Daily Declaration at paragraph 5.

The information Plaintiff seeks also contains proprietary and confidential information. Precisely how Standard makes its benefits decisions should not be disclosed outside of this litigation and an order is necessary to restrict distribution of any information Standard provides in response to these discovery requests. Because Plaintiff's Interrogatories are both cumulative and irrelevant, it was error for the Magistrate to grant in part the Second Motion to Compel, and the Court, in its de novo review, should deny the motion in its entirety.

### III. The Burden of the Requested Discovery Outweighs the Potential Benefit.

Even assuming that the Interrogatories permitted under the Order were relevant, the burden of the requested discovery on Standard outweighs any benefit to Plaintiff. See, e.g.,

Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) (citing Fed. R. Civ. P. 26(b)(1) (recognizing that the district court has broad discretion to limit discovery if it determines the burden or expense of the proposed discovery outweighs its likely benefits).

A goal of ERISA is to provide "a method for workers and beneficiaries to resolve disputes inexpensively and expeditiously." Perry v. Simplicity Eng'g Div. of Lukens Gen. Indus., 900 F.2d 963, 967 (6th Cir. 1990) (citing 1974 U.S. Code Cons. & Admin. News 8000). This goal cannot be met with broad discovery involving corporate practices, decisions in administration of other claims, and purported rewards and punishments to employees:

> If [wide ranging discovery] were the law, then every ERISA case involving an administrator who is also the plan funding source would involve far-reaching, open-ended, nearly limitless discovery. Plaintiff would depose claims reviewers, consulting physicians, and corporate offices of plan administrators. They would inspect claims manuals and other documents describing the claim review process, and review personnel files, employee evaluations, and other documents tending to show that employees of the administrator were pressured or rewarded for denying claims. Then, following the discovery, the issue of the decision maker's motivations would be extensively litigated, perhaps involving days or weeks of testimony. The expense of the ERISA litigation could easily become more then the benefits at issue.

Newman v. Standard Ins. Co., 997 F.Supp. 1276, 1280 (C.D. Cal. 1998); see also Palmer v. University Med. Group, 973 F.Supp 1179, 1108 (D. Or. 1997) (same).

In this case, considered individually or in the aggregate, the scope, breadth, and nature of the Interrogatories make responding to these discovery requests unduly burdensome and almost impossible. Interrogatories 3 through 6 request information from 2000 to present involving "any penalty [Standard] has imposed on any employee for making an inaccurate decision. . . ." These types of inquires require review of the performance of "any employee" involved in benefits

decision for almost 10 years. It would necessarily involve review of hundreds, if not thousands, of personnel files of present and former employees. See Christian v. Frank Bommarito Oldsmobile, Inc., 2009 WL 1657423, *3 (E.D. Mo. 2009) (concluding that the plaintiff's request for 5 years of defendant's financial information was "overly broad and unduly burdensome").

Further, the Magistrate Judge's Order presupposes that Standard has maintained a master file of employee decisions and penalties, which is easily accessed. In reality, Standard does not maintain a database or statistical records of disciplinary actions or "penalties" involving benefits decision makers. See Borden Declaration at paragraph 9. Standard maintains training, performance management and quality assurance programs that are designed to ensure accurate claim decisions making. In the event of an error, Standard's initial response it to correct the mistake; and second, to ensure it cannot happen again by appropriate training and/or coaching. If repeated errors or misconduct occurs, Standard takes appropriate disciplinary actions against the employee. Any records of the foregoing are maintained in individual personnel files. See Id. As such, responding to these Interrogatories would require Standard employees to review personnel files, for each past and present employee that made or assisted in making a claim decision since 2000. See Id. Standard would then have to make a judgment as to whether employees were "penalized" for their decisions.

Finally, the nature of the Interrogatories requires Standard to provide documents that contain sensitive, confidential and personal identifying information about employees and other claimants. Because Standard is obligated to protect such information, it must thoroughly review and redact each and every document prior to production. As the Magistrate recognized, even with such careful measures, personnel files "are likely to contain sensitive information, the nature of which cannot be cured by redaction of any kind." Docket No. 74, pp. 15-16. Indeed,

the Magistrate's order is internally inconsistent in that it denies Plaintiff's request for production of personnel files, but orders production of documents that "evidence any penalty you have imposed since 2000 on any employee for making an inaccurate decision." To the extent any such documents exist, they would be contained in employee personnel files.

Similarly, with respect to Interrogatories 9 through 12, Standard does not maintain a database which categorizes "opinions" rendered by its consulting physicians. See Daily Declaration at paragraphs 4-7. As previously disclosed by Standard, Dr. Zivin undertook 398 and Dr. Dickerman 1,939 reviews in 2003 through 2005. Multiple reviews could occur for a single claimant and the reviews could vary in scope from comment on a single chart note to review of a claimant's entire medical history. See Wagener Aff. and Exhibit A at page 3 of 4.

As such, the only way to determine whether either physician "provide[d] an opinion supporting denial [or allowance] of disability benefits. . ." is to identify claims in which these physicians participated, locate the physical files and review the actual reports and the claim decision letters. Then, a comparison of the opinion and resulting decision letter would have to be made to determine whether the medical opinion supported the affirmation or denial of the disability claim in the particular case. For example, in some cases, a physician could opine that occupational restrictions and limitations are medically supported, though benefits may not be payable because, as determined by a claims analyst, the particular policy does not provide for payment of benefit. Or a physician may opine that one of a claimant's co-morbid conditions (a common occurrence in many cases) supports restrictions and limitations benefits, while another condition does not. Given the interrogatory, Standard would have to make a judgment as to whether the physician's opinion ultimately supported allowance or denial of "any occupation" disability.

Standard estimates that undertaking the review necessary to determine whether a physician consultant's opinion supported denial or allowance of a claim would require, on average, 30 minutes for each opinion. For the nearly 2400 reviews conducted by Drs. Zivin and Dickerman in the three years requested, two full-time employees would have to work an estimated 73 eight-hour days. See Daily Declaration at paragraph 8.[2] Clearly, the time and cost associated with these undertakings is astronomical and the burden on Standard excessive, particularly when considering the cumulative nature of the discovery given the presumed conflict, the speculative and generic nature of the requests, and the Court of Appeals' simple directive on remand.

More importantly, the information regarding whether a physician "provide[d] an opinion supporting denial [or allowances] of disability benefits. . ." would be largely irrelevant to the issue of Standard's conflict of interest. Even if the evidence showed that a particular physician consultant rendered an opinion that supported work capacity in the majority of claims he reviewed, the most reasonable explanation for that evidence would be that work capacity actually existed in a majority of the claims reviewed. Absent a showing that the physician consultant's opinions were wrong, these reports would not show any bias.

For example, discovery requests based on this same flawed logic were denied in Dilley v. Metro Life Ins. Co., 2009 WL 756967 (N.D. Cal., Mar. 19, 2009). The Dilley court held that:

> The statistical information sought by plaintiff would not show that MetLife's conflict impacted its decision to deny plaintiff's claim. Details of the number of claims denied based on a medical records review by [the medical referral service] would be meaningless

---

[2] Because of the time involved in retrieving the information, Standard will make a companion motion to extend the time by which it is required to provide a response to these Interrogatories of 90 days.

> unless a finding could be made that MetLife had wrongly denied those claims. Because none of those cases are before the court, the court is not in a position to make such a finding.

Id. (emphasis added). Because the burden on Standard clearly outweighs any minimal benefit to Plaintiff, the Court should deny the Second Motion to Compel in its entirety.

## CONCLUSION

For the foregoing reasons, Standard respectfully requests that the Court, in its de novo determination, overturn the Magistrate's Order and deny Plaintiff's Second Motion to Compel in its entirety.

Dated: October 5, 2009

**BEARDSLEY, JENSEN & VON WALD, PROF. L.L.C.**

/s/ *Brad J. Lee*

Brad J. Lee
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD 57709
Telephone: (605) 721-2800

and

**MESSERLI & KRAMER P.A.**

Terrance J. Wagener
1400 Fifth Street Towers
100 S. Fifth Street
Minneapolis, MN 55402-1217
Telephone: (612) 672-3600

779078.1