UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN M. HACKETT, | ) | CIV. 06-5040-JLV |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND MODIFYING IN PART |
| vs. | ) | MAGISTRATE'S ORDER |
| | ) | AND GRANTING PLAINTIFF'S |
| STANDARD INSURANCE COMPANY, | ) | SECOND MOTION TO |
| | ) | COMPEL |
| Defendant. | ) | |

This matter is before the court on the plaintiff's second motion to compel discovery. (Docket 69). Defendant filed its memorandum in opposition to plaintiff's second motion to compel discovery. (Docket 71). The court then referred this matter to Magistrate Judge Veronica Duffy (Docket 72) for submission of her proposed order in accordance with 28 U.S.C. § 636(b)(1)(A). Magistrate Judge Duffy issued her order granting in part and denying in part plaintiff's second motion to compel discovery (Docket 74), and defendant filed its objections to the magistrate judge's order. (Docket 77). This matter is before the court for a *de novo* determination under 28 U.S.C. § 636(b)(1)(C).

## PROCEDURAL HISTORY

Ms. Hackett brought suit against Standard Insurance Company ("Standard"), alleging that Standard wrongfully denied her claim for long-term

disability benefits under the group disability insurance policy issued to Ms. Hackett's former employer, Mileage Plus, Inc. (Docket 1).

On August 15, 2007, Chief Judge Karen E. Schreier granted summary judgment to defendant. (Docket 56). Chief Judge Schreier applied Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998) and held that, although Standard operated under a conflict of interest, the court could not consider the conflict of interest in reviewing the lawfulness of Standard's decision to deny benefits to Ms. Hackett because Ms. Hackett failed to present "evidence to suggest that any potential funding conflict of interest caused a serious breach of a fiduciary duty." (Docket No. 56, quoting Woo, 144 F.3d at 1161-62).

The Eighth Circuit Court of Appeals reversed the district court's decision and remanded the case for reconsideration of the conflict of interest, citing the intervening decision of the United States Supreme Court in Metropolitan Life Insurance Co. v. Glenn, ___ U.S. ___, 128 S. Ct. 2343 (2008). Hackett v. Standard Ins. Co., 559 F.3d 825, 829 (8th Cir. 2009). The court in Hackett instructed:

> Glenn resolved the question of how the conflict should be considered when determining if a plan administrator abused its discretion. Under Woo, if a claimant proved a conflict of interest, he also had to prove a serious breach of the plan administrator's fiduciary duty. If the claimant met the Woo test, the district court would review the administrator's decision using a sliding-scale approach, decreasing the "deference given to the administrator in proportion to the seriousness of the conflict of interest." 144 F.3d at 1161. In Glenn,

2

> the Supreme Court made clear the conflict does not change the standard of review applied by the district court. Rather, "a conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" Glenn, 128 S. Ct. at 2350 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (additional quotation and citation omitted)).

Id. at 830.

The court in Hackett provided guidance to the district court for its remand evaluation of Standard's conflict of interest.

> The importance of taking Standard's conflict of interest into account is illustrated by the "combination-of-factors method" employed by the Court in Glenn, where the conflict serves "as a tiebreaker when the other factors are closely balanced" and is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important . . . where the administrator has taken active steps to reduce potential bias and to promote accuracy." [Glenn] at 2351. In Glenn, the [Supreme] Court concluded the conflict took on even greater significance because, <u>as in this case</u>, the insurer 1) encouraged the claimant to apply for social security disability benefits, and then disregarded the Social Security Administration's finding she could do no work, and 2) emphasized medical records which supported a denial of benefits over records suggesting a contrary conclusion. Id. at 2352.

Id. (emphasis added).

Following remand, plaintiff served on defendant a second set of interrogatories and request for production of documents. Defendant's answers/responses (Docket 69-2) prompted plaintiff's second motion to compel discovery. Defendant's objections are essentially that discovery has closed and that the remand to the district court was only to allow the court to consider the administrative record in light of Glenn. (Docket 69-2, Answer 1).

3

The decision of Magistrate Judge Duffy to allow limited discovery by plaintiff prompted defendant's objections (Docket 77), which can be summarized by the subsections of defendant's objections:

1. The Magistrate Ignored the Posture of the Case in Ordering Discovery.

2. The Requested Discovery is Cumulative and Irrelevant Given the Presumed Conflict.

3. The Burden of the Requested Discovery Outweighs the Potential Benefit.

Id. Each of those objections will be addressed with the same captions.

**1. THE MAGISTRATE JUDGE IGNORED THE POSTURE OF THE CASE IN ORDERING DISCOVERY**

Defendant asserts the Eighth Circuit did not indicate an intent to allow additional discovery and plaintiff did not bring on before the district court a motion to reopen discovery. (Docket 77, p. 3). Thus, according to the defendant, Magistrate Judge Duffy erred in allowing plaintiff's discovery to continue. Id. However, defendant's objections fail to acknowledge the issuance of an order setting deadlines (Docket 75) entered by Chief Judge Schreier on September 21, 2009, the same day Magistrate Judge Duffy's order (Docket 74) was issued.

Magistrate Judge Duffy went through an appropriate analysis of the discovery which should be allowed under Fed. R. Civ. P. 26 under the circumstances of this case. (Docket 74, pp. 4-7). The court concurs in that

4

analysis and incorporates the reasoning into this decision. Having previously restricted discovery by plaintiff before the Hackett remand by the Eighth Circuit, it is clear that Chief Judge Schreier perceived that additional discovery should occur. (Docket 75). Chief Judge Schreier has already ruled on the right of plaintiff to proceed with discovery and it only remains for this court to determine if the limited discovery authorized by Magistrate Judge Duffy should proceed. Defendant's objection to Magistrate Judge Duffy's order on this basis is denied.

**2. THE REQUESTED DISCOVERY IS CUMULATIVE AND IRRELEVANT GIVEN THE PRESUMED CONFLICT**

Defendant suggests that Glenn did nothing to change the landscape for evaluating a conflict of interest where an administrator (such as Standard) pays claims with its own funds. (Docket 77, p. 4). A simple reading of the concerns expressed by the Supreme Court discloses that Glenn changed the analysis of how the district court should weigh the existence of other evidence in light of a conflict of interest. The task of determining the weight to be given to a conflict of interest must be done on a case-by-case basis. Glenn, 128 S. Ct. at 2351. Under the Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) evaluation of the conflict of interest as one of the "factors" to be considered, the Glenn court concluded that "what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of

5

interest is one." Glenn, 128 S. Ct. at 2351. "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case specific importance." Id. To the Glenn court, those other factors may include:

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id.

Defendant suggests that discovery is not appropriate post-Glenn where there is an acknowledged conflict of interest because the failure of a company to "wall off" claims administrators from financial managers does not in and of itself establish an enhanced conflict. (Docket 77, p. 4). Yet, the Glenn court was concerned about the failure of the record to show "MetLife's efforts to assure accurate claims assessment." Id.

Plaintiff's attempt to make inquiry of Standard's efforts to "assure accurate claims assessment" is consistent with the clear language of Glenn. Prior to Glenn, Chief Judge Schreier limited plaintiff's discovery solely to look at the "business relationship between Standard and Dr. Zivin and Dr.

6

Dickerman." (Docket 37, p. 5). Now the question post-Glenn is whether the court should allow discovery to extend into the areas of concern not only expressed by plaintiff in her interrogatories and requests for production, but by the Supreme Court in Glenn. Magistrate Judge Duffy analyzed the split of authority post-Glenn and that analysis need not be restated here. After reviewing the authority and logic expressed on both sides of the discovery issue, this court concludes the more appropriate course is for the court to allow limited discovery. Where a conflict of interest exists, the court, using its authority under Fed. R. Civ. P. 26, should allow plaintiff to inquire into any financial incentive an administrator or its claims department may have in denying claims which, but for the conflict, would seem appropriate for payment of benefits. Sanders v. Unum Life Ins. Co. of Am., No. 4:08CV00421 JLH, 2008 WL 4493043, at *4 (E.D. Ark. Oct. 2, 2008); Burgio v. Prudential Life Ins. Co. of Am., 253 F.R.D. 219, No. CV 06-6793(JS)(AKT), 2008 WL 4376241, at *18 (E.D. N.Y. Sept. 24, 2008); Myers v. Prudential Ins. Co. of Am., 581 F. Supp. 2d 904, No. 1:08-cv-22, 2008 WL 4569969, at *10 (E.D. Tenn. Sept. 22, 2008); Hogan-Cross v. Metro. Life Ins. Co., 568 F. Supp. 2d 410, 414 (S.D. N.Y. 2008).

The same holds true with respect to the relationship between an administrator's claims department and those outside medical advisors who may have an incentive to inappropriately deny claims so as to extend or

otherwise enhance their longstanding financial relationship with the administrator.  Like Magistrate Judge Duffy, this court agrees with the United States District Court for the Eastern District of Missouri, which held that "a conflict . . . cannot be considered in a vacuum.  Discovery is required to explore the nature and extent of the purported conflict . . . at issue."  Sampson v. Prudential Ins. Co. of America, No. 4:08CV1290 CDP, 2009 WL 882407, at *2 (E.D. Mo. March 26, 2009) (recognizing the court's obligation to apply Glenn and ordering limited discovery beyond the administrative record).

The landscape has, indeed, changed post-Glenn.  The plaintiff must be allowed to make inquiry into the factors which will affect the weight that the court must give to the conflict of interest analysis under Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998).  For these reasons, defendant's objection on this basis is denied and the court accepts the magistrate judge's conclusion that limited discovery by plaintiff should be allowed.

3.  **THE BURDEN OF THE REQUESTED DISCOVERY OUTWEIGHS THE POTENTIAL BENEFIT**

As its last objection to Magistrate Judge Duffy's order allowing the plaintiff limited discovery, defendant asserts that the cost to the defendant of producing the requested discovery far outweighs the benefit this information may have to plaintiff in presenting her case to the court.  (Docket 77, p. 6).  Of first concern to the court is the fact that defendant did not raise this issue before the magistrate judge and prior to the entry of her order.  Defendant

8

neither moved for leave to present additional evidence nor to supplement the record before the magistrate judge.

Under 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), where a district court reviews a magistrate judge's report and recommendation regarding a dispositive motion, the court has discretion to consider additional evidence not presented to the magistrate judge.  See United States v. Raddatz, 447 U.S. 667, 673-74 (1980).  It is also within the discretion of a district court reviewing a magistrate judge's report and recommendation *de novo* to ignore newly proffered evidence because its presentation is untimely and because the proponent of that evidence provided no reason for failing to present it to the magistrate judge.  See Callas v. Trane CAC, Inc., 776 F. Supp. 1117, 1119 (W.D. Va. 1990), aff'd, 940 F.2d 651 (4th Cir. 1991); see also Freeman v. County of Bexar, 142 F.3d 848, 852 (5th Cir. 1998) (the district court has an "obligation to review *de novo* the actual evidence on objected-to findings, but the district court should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge.").

While the Eighth Circuit Court of Appeals does not appear to have addressed this particular issue, the court aligns itself with United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  In Howell, the Ninth Circuit reasoned:

> [A]ffording district courts discretion to consider new evidence makes prudential sense. The magistrate judge system was designed to alleviate the workload of district courts. See Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990

9

> (1st Cir. 1988). To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court. "Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." Id. at 991 (additional citation omitted). Equally important, requiring the district court to hear evidence not previously presented to the magistrate judge might encourage sandbagging. "[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge." Paterson-Leitch Co., 840 F.2d at 991.

Id. at 622. See also Williams v. McNeil, 557 F.3d 1287 (11th Cir. 2009).

While it is not the preferred course and the court does not condone the practice of parties to wait in the weeds and then supplement the record after the fact, the court will, in the interest of justice, consider defendant's submissions accompanying its objections. (Docket 77-2, 3 & 4). The court also will consider plaintiff's response to defendant's objection to Magistrate Judge Duffy's discovery order (Docket 79) and the factual assertions contained therein.

The court agrees with the analysis of Magistrate Judge Duffy that plaintiff's interrogatories 1-6 "go to the heart of the conflict of interest issue."[1] (Docket 74, p. 13). Those interrogatories are:

1. Did you impose management checks that penalize inaccurate decisionmaking, regardless of whom the inaccuracy benefits, which applied to Kathleen Hackett's claim?

2. Produce all documents which evidence whether you imposed management checks that penalize inaccurate decisionmaking, regardless of whom the inaccuracy benefits, which applied to Kathleen Hackett's claim.

3. Since 2000, have you penalized any employee for making an inaccurate decision that favors Standard?

4. Produce all documents which evidence any penalty you have imposed since 2000 on any employee for making an inaccurate decision that favors Standard.

5. Since 2000, have you penalized any employee for making an inaccurate decision that favors an insured?

6. Produce all documents which evidence any penalty you have imposed since 2000 on any employee for making an inaccurate decision that favors an insured.

These questions are exactly the type of inquiries suggested and endorsed by the United States Supreme Court in <u>Glenn</u>, 129 S. Ct. at 2351. While plaintiff requested, and Magistrate Judge Duffy endorsed, the scope of these interrogatories from 2000 to present, it seems appropriate to limit the

---

[1]The discovery requests at issue in plaintiff's second motion to compel include both interrogatories and requests for production. Both Magistrate Judge Duffy and defendant refer to the requests as "interrogatories." For consistency, the court will do likewise.

inquiries to the time period of 2000 through 2006, the time period relevant to the decision-making process by Standard with regard to Ms. Hackett's long-term disability claim. Fed. R. Civ. P. 26(b)(2)(C)(iii), Fed. R. Civ. P. 72(a), and 28 U.S.C. § 636(b)(1)(C) give this court authority to limit discovery in this way.

Where the discovery requests are appropriately focused, as these interrogatories and requests for production of documents are under <u>Glenn</u> and <u>Hackett</u>, the fact that responding to them may be burdensome and expensive is not, in itself, a reason for the court to deny answers and production. See <u>In re Folding Carton Antitrust Litigation</u>, 83 F.R.D. 260, 265 (N.D. Ill. 1979) ("[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate . . . .' "); <u>Alexander v. Parsons</u>, 75 F.R.D. 536, 539 (W.D. Mich. 1977) ("the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence."); and <u>Burns v. Imagine Films Entm't, Inc.</u>, 164 F.R.D. 589, 593 (W.D. N.Y. 1996) (the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection). Moreover, if discovery requests are relevant, the fact that they involve detail work, which may be

time consuming, is not sufficient to render them objectionable. See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D. N.Y. 1960) and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) ("[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense."). To the extent that Standard's objection (Docket 77, pp. 5-6) to the magistrate judge's order places this issue before the court, defendant's objection will be denied. However, plaintiff's six interrogatories will be limited specifically to the time period 2000 through 2006. The magistrate judge's order is modified accordingly.

Defendant next asserts that a nearly ten-year review of employee records for inaccurate decision making will "necessarily involve review of hundreds, if not thousands, of personnel files of present and former employees." (Docket 77, p. 8). Now that the court has reduced significantly the time frame of plaintiff's discovery, the scope of defendant's record search will be reduced accordingly. Standard acknowledges that a process exists by which its employees could review personnel files to locate and develop appropriate responses to plaintiff's interrogatories 3-6, but that it is "a process that could take weeks." (Docket 77-3, ¶10). Standard represents that it has "more than 200 employees in job positions that involve making claim decisions." Id. But the breadth of that statement suggests that many of those

13

employees are involved in decision making in other than long-term disability claims similar to the claim denied in Ms. Hatchett's case. Under Glenn and Hackett the inquiry must be limited to relevant information, which in this case should focus on long-term disability claims.

Defendant's next objections relate to the magistrate judge's order as it requires responses to plaintiff's interrogatories 9-12. (Docket 77, pp. 9-10). Those interrogatories are:

> 9. From 2003 to 2005, how many times did Dr. Zivin provide an opinion supporting denial of disability benefits under the "any occupation" standard?
>
> 10. From 2003 to 2005, how many times did Dr. Zivin provide an opinion supporting allowance of disability benefits under the "any occupation" standard?
>
> 11. From 2003 to 2005, how many times did Dr. Dickerman provide an opinion supporting denial of disability benefits under the "any occupation" standard?
>
> 12. From 2003 to 2005, how many times did Dr. Dickerman provide an opinion supporting allowance of disability benefits under the "any occupation" standard?

While the magistrate judge's order indicates that these interrogatories cover a two-year period, the time period of 2003 to 2005 is in actuality three full years. To the extent this constitutes an error by the magistrate judge, it is noted and the court corrects the order accordingly.

The first round of discovery in this case "revealed that Dr. Zivin reviewed 398 files for Standard from 2003 to 2005, and Standard paid him

$115,228 during this period." Plaintiff's statement of material facts in support of motion for summary judgment. (Docket 45, ¶ 51). Discovery also disclosed that "Dr. Dickerman reviewed 1,939 files for Standard from 2003 to 2005, for which Standard paid him $577,000." Id. ¶ 63. Standard does not dispute these statements. See also defendant's objections. (Docket 77, p. 9).

By applying simple arithmetic it appears that Standard paid Dr. Zivin $289.94, and Dr. Dickerman $297.58, on average, for each "review" performed during this three-year period. Defendant asserts that these physicians may have been involved in "multiple reviews" for a "single claimant" and that the "reviews could vary in scope from comment on a single chart note to review of a claimant's entire medical history." (Docket 77, p. 9). Presumably, billings submitted by these physicians to Standard would identify the particular claimant file or record reviewed. Using that information, defendant's employees could determine the number of claimant's files reviewed versus the number of multiple reviews for a single claimant file. While defendant objects to the preparation of the statistical information requested in these interrogatories, Standard acknowledges that the information is available to it (and certainly not otherwise available to plaintiff) and that responses to these interrogatories can be completed in ninety days. (Docket 77, p. 10).

The requested information is relevant to plaintiff's inquiry and to the Glenn court's concern about whether "an insurance company administrator

has a history of biased claims administration . . . ." <u>Glenn</u>, 128 S. Ct. at 2351.  Whether this statistical information discloses Doctors Zivin and Dickerman, either jointly or individually, made a determination of "no qualifying disability" in 90 percent, 50 percent, or 10 percent of the cases reviewed will allow plaintiff to determine whether she can argue that Standard was engaged in a history of biased claims administration as the result of its relationship with these two consulting physicians.  Without this information, only Standard possesses certainty regarding its practices, and plaintiff would be left with mere speculation.  Plaintiff is entitled under <u>Glenn</u> and <u>Hackett</u>, if discovery warrants, to shore up the evidence which Chief Judge Schreier found lacking in her first analysis of this case under <u>Woo</u>.  For these reasons, defendant's objections to interrogatories 9-12 are denied.

Based upon the court's *de novo* review under 28 U.S.C. § 636(b)(1)(C), it is hereby

ORDERED that except as modified above, the magistrate judge's order granting in part and denying in part plaintiff's second motion to compel discovery (Docket 74) is adopted by the court.

IT IS FURTHER ORDERED that defendant's objections (Docket 77), except as sustained above, are denied.

IT IS FURTHER ORDERED that plaintiff's second motion to compel discovery (Docket 69) is granted.

IT IS FURTHER ORDERED that defendant shall provide answers and responses to plaintiff's interrogatories 1-6 relating to long-term disability claims for the time period of 2000 through 2006.

IT IS FURTHER ORDERED that defendant shall provide answers and responses to plaintiff's interrogatories 9-12.

IT IS FURTHER ORDERED that defendant's answers and responses be served upon plaintiff on or before **July 13, 2010**.

Dated April 14, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE