UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| KATHLEEN M. HACKETT, | ) | CIV. 06-5040-JLV |
|---|---|---|
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| STANDARD INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

On June 30, 2010, the parties filed a stipulation and request for order (Docket 84), agreeing that plaintiff Kathleen M. Hackett was entitled to receive long-term disability benefits from Standard Insurance Company from August 26, 2005, to the present and continuing for as long as she continues to meet all the requirements of the long-term disability policy. Associated with that stipulation was the parties' agreement that the only two remaining issues were (1) whether plaintiff is entitled to prejudgment interest; and (2) whether plaintiff is entitled to an award of attorney's fees and costs. Id. On July 7, 2010, the court entered an order granting plaintiff the long-term disability benefits and directing the submission of the remaining issues not resolved by settlement for resolution by the court. (Docket 85). On August 17, 2010, plaintiff filed separate motions for pre-judgment interest and attorney's fees and costs. (Dockets 86 and 89). The motions are granted.

## PROCEDURAL HISTORY

Because of the longstanding nature of this case and its course through the court system, it is necessary to provide some procedural background. On May 25, 2006, plaintiff Kathleen M. Hackett filed her complaint alleging the right to receive long-term disability benefits from her employer's group disability insurance policy with Standard Insurance Company ("Standard"). (Docket 1). The complaint finds its basis in the provisions of the Employee Retirement Security Act of 1974 ("ERISA") under 29 U.S.C. § 1001 *et seq.* Id. By its answer, Standard asserted that "as a claimed fiduciary under ERISA, [it] discharged its duties 'in accordance with the documents and instruments governing the Plan.'" (Docket 7, ¶ 8). It also asserted plaintiff's claims were without merit, making Standard entitled to attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).[1] Id. at ¶ 10.

On January 3, 2007, Standard filed a motion for summary judgment. (Docket 26). On January 29, 2007, Chief United States District Judge Karen E. Scheier granted in part and denied in part plaintiff's motion to compel discovery. (Docket 37). Following limited discovery, plaintiff filed her cross-

---

[1]Section 1132(g)(1) of Title 29 United States Code provides: (g) Attorney's fees and costs; awards in actions involving delinquent contributions (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

motion for summary judgment. (Docket 41). On August 15, 2007, Chief Judge Schreier granted Standard's motion for summary judgment and denied plaintiff's cross-motion for summary judgment. (Docket 56). Applying the "Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998), . . . less deferential standard of review in the ERISA context," Chief Judge Schreier found plaintiff had identified a rebuttable presumption of a conflict of interest because the insurer and the claims administrator were the same entity [Standard], thus creating a "palpable conflict of interest." (Docket 56, pp. 11-12). Under part two of the Woo test, plaintiff was required to show the "conflict of interest or serious procedural irregularity caused a serious breach of the administrator's fiduciary duty." Id. at p. 12. Chief Judge Schreier concluded plaintiff did not satisfy the second prong of the Woo test. Id. Thus, under "Eighth Circuit precedent, [plaintiff] has not made a sufficient showing under Woo to obtain a less deferential review of Standard's denial of benefits." Id. at p. 14. Judgment in favor of Standard was filed that same day. (Docket 57).

On September 12, 2007, plaintiff filed a notice of appeal from the order granting summary judgment and judgment for Standard. (Docket 58). While the case was on appeal, the United States Supreme Court issued its opinion in Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008). The Court

of Appeals for the Eighth Circuit then issued its decision in this case. Hackett v. Standard Insurance Company, 559 F.3d 825 (8th Cir. 2009). "In Glenn, the Court concluded a conflict of interest exists whenever the plan administrator is also the employer or insurance company which ultimately pays benefits. . . . Additionally, Glenn resolved the question of how the conflict should be considered when determining if a plan administrator abused its discretion." Id. at 830 (internal citation omitted). The Eighth Circuit acknowledged the importance of Glenn to the facts before it in Hackett:

> The importance of taking Standard's conflict of interest into account is illustrated by the "combination-of-factors method" employed by the Court in Glenn, where the conflict serves "as a tiebreaker when the other factors are closely balanced" and is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important . . . where the administrator has taken active steps to reduce potential bias and to promote accuracy."

Id. The court recognized how Glenn actually fit the facts in Hackett:

> In Glenn, the Court concluded the conflict took on even greater significance because, as in this case, the insurer 1) encouraged the claimant to apply for social security disability benefits, and then disregarded the Social Security Administration's finding she could do no work, and 2) emphasized medical records which supported a denial of benefits over records suggesting a contrary conclusion.

Id. (emphasis added). "Because the district court failed to consider the conflict when it evaluated the plan administrator's decision, [the Eighth Circuit] reverse[d] and remand[ed], thereby allowing the district court to reconsider its decision in light of Glenn." Id. The Eighth Circuit then

4

awarded plaintiff $25,000 for her attorney's fees and expenses related to the appeal. (Docket 66).

Following remand, plaintiff filed a second motion to compel discovery. (Docket 69). Standard resisted plaintiff's motion. (Docket 71). Magistrate Judge Veronica L. Duffy submitted her proposed order in accordance with 28 U.S.C. § 636(b)(1)(A). On April 14, 2010, the court conducted a *de novo* review of the magistrate judge's proposed order and entered its order granting in part and modifying in part the magistrate judge's order and granting plaintiff's second motion to compel. (Docket 83). That order required Standard to "provide answers and responses to plaintiff's interrogatories 1-6 relating to long-term disability claims for the time period of 2000 through 2006 . . . . [and] plaintiff's interrogatories 9-12." Id. at p. 17. Rather than responding to discovery, Standard stipulated to the payment of benefits.

## ANALYSIS

**MOTION FOR ATTORNEY FEES AND EXPENSES**

Plaintiff's initial motion for attorney fees and costs requests $36,974.03. (Docket 89). She requests payment for 136.00 hours at $250 per hour for attorney's fees of $34,000, together with itemized expenses of $934.03 and sales taxes of $2,040. (Docket 90-1). Her attorney's supplemental declaration seeks an additional $1,961, that is, 7.40 hours at $250 per hour for attorney fees of $1,850, together with sales taxes of $111. (Docket 94-1). Altogether,

plaintiff seeks an award of $38,935.03. (Docket 94). Plaintiff submits detailed date and time activity ledgers in support of her requests. (Dockets 90-1 and 94).

Standard objects, in whole, to plaintiff's request for an award of attorney's fees and costs. (Docket 92). It recognizes that a decision to award attorney's fees and expenses under ERISA is discretionary under 29 U.S.C. § 1132(g)(1). Id. at p. 4. However, Standard claims plaintiff did not achieve any degree of success on the merits of her case and thus, she is not eligible for attorney's fees and costs. Id. Standard also identifies separate time periods or activities for which it asserts plaintiff should not be awarded fees or costs. Those are:

1. The time period from April 26, 2006, through June 20, 2007. (Id. at p. 5);

2. The time period from March 27, 2009, through August 16, 2010. (Id. at p. 6);

3. Six date certain identified entries. (Id. at p. 10); and

4. Seven other generic entries involving a "review" of the file. (Id.).

In an ERISA case, a court may "in its discretion . . . award fees and costs to either party . . . as long as the fee claimant has achieved some degree of success on the merits." Hardt v. Reliance Standard Life Insurance Co., ___ U.S. ___, 130 S. Ct. 2149, 2152 (2010) (internal citation and quotation

marks omitted). In Hardt, the district court denied both parties' cross-motions for summary judgment and suggested that Reliance "act on Ms. Hardt's application by adequately considering all the evidence . . . [or] [o]therwise, it warned, judgment will be issued in favor of Ms. Hardt." Id. at 2154 (internal quotation marks omitted). Reliance subsequently found plaintiff to be entitled to long-term disability benefits and paid her all accrued, past-due benefits. Id.

Following the payment of past-due benefits, Ms. Hardt applied for attorney's fees and costs under § 1132(g)(1). Id. The district court applied "the three-step framework that governed fee requests in ERISA cases under Circuit precedent." Id. "At step one of that framework, a district court asks whether the fee claimant is a 'prevailing party.'" Id. (quoting Martin v. Blue Cross & Blue Shield of Virginia, Inc., 115 F.3d 1201, 1210 (4th Cir. 1997) and citing Buckhannon Board & Care Home, Inc., v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 603 (2001)). "If the fee claimant qualifies as a prevailing party, the court proceeds to step two and 'determin[es] whether an award of attorney's fees is appropriate' by examining 'five factors.'" Id. Those five factors are:

(1) [T]he degree of opposing parties' culpability or bad faith;

(2) [A]bility of opposing parties to satisfy an award of attorneys' fees;

7

(3) [W]hether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;

(4) [W]hether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) [T]he relative merits of the parties' positions.

Id. at n. 1 (quoting Quesinberry v. Life Insurance Company of North America, 987 F.2d 1017, 1029 (4th Cir. 1993). The district court found Ms. Hardt was a prevailing party and that she satisfied the five factors for awarding attorney's fees. Id. at 2155. The Court of Appeals for the Fourth Circuit reversed, finding Ms. Hardt was not a "prevailing party," in other words, she had not "obtained an 'enforceable judgmen[t] on the merits' or a 'court-ordered consent decre[e].'" Id.

In Hardt, the United States Supreme Court held "that a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)." Id. at 2156. The Court also held the "five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, [and] . . . are not required for channeling a court's discretion when awarding fees under this section." Id. at 2158.

> Accordingly, a fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g)(1) . . . . A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome

8

> of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' "

Id. at 2158 (internal citation omitted).

Because Ms. Hardt was ultimately awarded benefits by Reliance, without the necessity of a court's order or judgment, the Supreme Court found that even though she lost her cross-motion for summary judgment "Hardt has achieved far more than 'trivial success on the merits' or a 'purely procedural victory.' Accordingly, she has achieved 'some success on the merits . . . .' " Id. at 2159. Based on that conclusion, the Court reinstated the district court's award of attorney's fees and costs to Ms. Hardt. Id.

Applying the Hardt court criteria to the present case, the court finds Ms. Hackett "achieved far more than trivial success on the merits," and certainly more than a "purely procedural victory." Id. Her achievement of "some success on the merits" was a complete victory–the very prayer for relief which she sought by her original complaint. Id. Her complaint sought "recovery of benefits due under the terms of the plan, to enforce her rights under the terms of the plan, and to clarify her rights to future benefits under the terms of the plan . . . ." (Docket 1, p. 2). That is what this court's order, by stipulation of the parties, granted. It was "ORDERED that . . . Kathleen M. Hackett is entitled to receive long-term disability benefits from Standard Insurance Company from August 26, 2005, to the present and continuing for

9

as long as she continues to meet all the requirements of the long-term disability policy." (Docket 85). Ms. Hackett secured what is in essence a consent decree. Hardt, at 2155.

In concluding Ms. Hackett is entitled to attorney's fees, the court must decide the reasonable hourly rate which should be applied to any fees award. 29 U.S.C. § 1132(g)(1). See also Hensely v. Eckerhart, 461 U.S. 424, 433 (1983) ("It remains for the district court to determine what fee is 'reasonable.' "). This starting point is useful, because "[t]his calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Id.

Ms. Hackett's attorney, Mr. Leach, requests his fees award be based on an hourly rate of $250. (Docket 90, p. 2). His legal education, years of professional experience, and representation of ERISA plaintiffs are all set forth in his declaration in support of a fees award. Id. at pp. 3-4. Additionally, Mr. Leach provides information relating to the fees of other, equally qualified attorneys who are experienced as trial attorneys engaged in similar practice. Id. at pp. 5-6. Although Standard objects to any award, it does not express any objection to Mr. Leach's requested hourly rate for his professional services in this case. See Docket 92. The court finds Mr. Leach has "produce[d] satisfactory evidence . . . that [his] requested rate[] [is] in line with those prevailing in the community for similar services of reasonably comparable

skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984). The court finds an hourly rate of $250 to be appropriate for Mr. Leach's professional services and appropriate for use in this analysis.

The next step is to multiply that reasonable hourly rate by "the number of hours reasonably expended on the litigation . . . ." Hensley, 461 U.S. at 433. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Id. If "the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. As indicated earlier in this analysis, Mr. Leach's submission provided date certain and detailed descriptions of all services provided. (Dockets 90-1 and 94-1).

Standard asserts that any hours spent by Attorney Leach on unsuccessful claims should be excluded when considering the amount of a reasonable award. (Docket 92, p. 9). Standard compartmentalizes those time periods to the following.

### APRIL 26, 2006, THROUGH JUNE 20, 2007

Standard argues that because Chief Judge Schreier ruled against Ms. Hackett during the cross-motions for summary judgment, this "lack of success on the merits . . . precludes the award of attorneys' fees and expenses from April 26, 2006 through June 20, 2007." Id. at p. 5. Standard's argument is off the mark. The question is not whether plaintiff lost a round or

two in her fight for long-term disability benefits, but rather whether she ultimately prevailed on that claim. In this litigation there were no other claims, or collateral issues, separate and apart from Ms. Hackett's claim for disability benefits.

Ms. Hackett was compelled to defend her right to benefits by going through the summary judgment phase, then appealing that adverse decision to the Court of Appeals for the Eighth Circuit.[2] But for that process, Ms. Hackett could never have prevailed and been awarded disability benefits as requested in her complaint. The summary judgment proceedings were part of the "action" within the meaning of § 1132(g)(1). The fees and costs requested during this period of litigation were reasonably and necessarily justified in pursuit of Ms. Hackett's claim. Plaintiff is entitled to her attorney's fees and costs from April 26, 2006, through June 20, 2007.

## MARCH 27, 2009, THROUGH AUGUST 15, 2010

Standard argues this time period should be excluded because it relates to discovery requests and a second motion to compel on which plaintiff only achieved "purely procedural victories" or successes "trivial" in nature. (Docket

---

[2]Because plaintiff achieved "some degree of success" on the merits of her appeal to the Eighth Circuit and that Court "reversed the decision of the district Court and remanded . . . for proceedings consistent with the [Eighth Circuit] opinion," Ms. Hackett was awarded attorney's fees and costs which are separate from and not part of this current request. See Docket 68.

92, pp. 5-6). Standard asserts plaintiff had only a "partial victory on a procedural, non-dispositive motion . . . ." Id. at p. 6.

Again, Standard misses the mark. Plaintiff's second motion to compel discovery was focused and premised upon the defendant's refusal to disclose the financial relationship between its claims department and those physicians who contracted with Standard to evaluate long-term disability claims. See Docket 69. Plaintiff argued this information was relevant to evaluate a conflict of interest when Standard, the administrator, pays claims out of its own funds. The court ultimately agreed with plaintiff's position and ordered the production of documentation relating to long-term disability claims and the outside physicians' financial relationship with Standard. See Order Granting in Part and Modifying in Part Magistrate's Order and Granting Plaintiff's Second Motion to Compel (Docket 83).

That Standard ultimately chose to pay, in full, all of plaintiff's accrued long-term disability benefits and future payments does not change the merit of success plaintiff had on these issues. But for the order compelling discovery, plaintiff would not have been in a position to have Standard change its posture and longstanding denial of long-term disability benefits. Agreeing to pay benefits instead of producing the discovery required by the court's order to compel is not a victory for Standard, but rather, a victory on the

13

merits for plaintiff.  Ms. Hackett is entitled to attorney's fees and costs for the time period from March 27, 2009, through August 16, 2010.

Standard also asserts plaintiff is not entitled to the payment of fees and costs for a number of identified entries in Attorney Leach's detailed billing statements.  Those are separately evaluated by the court.

### SIX DATE CERTAIN IDENTIFIED ENTRIES

Standard objects to a number of entries because they are for "services that were redundant, inefficient, or simply unnecessary . . . ." (Docket 92, p. 10).  Those entries are for the following dates:  04/26/06, 08/01/06, 08/03/06, 10/18/06, 01/03/07, and 02/02/10.  Id.

On April 26, 2006, Mr. Leach recorded the following: "[r]eview file; draft fee agreement; conference with client 1.5 [hours] $375.00." (Docket 90-1, p. 1).  Preparing a fee agreement with a new client, reviewing her file materials and conferring with a new client are appropriate and necessary steps to commence representation.  See SDCL § 16-18 Appendix Rule 1.5(c).

On August 1, 2006, Mr. Leach's billing ledger reports "[c]onference with secretary and legal assistant re: attempts to open CD; letter to [Standard Attorney] T. Wagener 0.40 [hours] $100.00." (Docket 90-1, p. 2).  Mr. Leach explains this activity was necessary because Mr. Wagener had submitted Ms. Hackett's claims file to Mr. Leach on a CD which could not be opened.  The described activities and time are appropriate when technology fails,

14

particularly through no fault of Mr. Leach or his staff. There is nothing unreasonable about the time allocated to this task or Mr. Leach's explanation as to how and why the time was spent.

On August 3, 2006, Mr. Leach's activities were "[r]ead e-mails re: more attempts to open CD; telephone call to Matt Hodges (Standard) re: same; memo to file 0.50 [hours] $125.00." Id. Again, when technology fails, it is reasonable for Mr. Leach to communicate with Standard to attempt to accomplish the ultimate task–opening the CD and reviewing Ms. Hackett's claims file contained in it.

On October 18, 2006, the entry is: "[t]elephone conference with clerk's office; calendar reply brief deadline; initial look at documents filed 0.20 [hours] $50.00." Id. at p. 3. Mr. Leach indicates in his reply the documents examined were the Standard documents filed. (Docket 95, p. 11). The time entry coincides with the electronic filing of documents on that day–Standard's memorandum in opposition to plaintiff's motion for summary judgment (Docket 15); the affidavit of attorney Terrance J. Wagener (with three attachments) (Docket 16); and a certificate of service (Docket 18). It is reasonable and expected that Attorney Leach would spend two-tenths of an hour to perform an initial review of those documents, communicate with the clerk's office and calendar the date plaintiff's reply brief would be due.

On January 3, 2007, the billing ledger contains the following entry: "[r]ead e-filings; e-file responses; t/c clerk's office re: e-filing problems; letter to client 0.40 [hours] $100.00." (Docket 90-1, p. 4). Again, the electronic filing system for the court discloses on that date Standard filed a motion to seal record (Docket 23), a motion for summary judgment (Docket 26), together with its statement of material facts (Docket 29), two memoranda of its own (Dockets 24 and 27), and plaintiff's responses to both motions (Dockets 31 and 32). That Mr. Leach performed all of these functions and requests only four-tenths of an hour is not only reasonable, but exceptionally generous to the defendant, as there is no question significantly more time could have been charged for all of these professional services.

On February 2, 2010, the billing ledger identifies the following activities: "[l]eg. research re: client's question re: received Form 1099 based on Standard's atty. fee payment per 8th Circuit order, does she pay taxes on my fee, Leg. research, T/C client, e-mail client 0.50 [hours] $125.00." (Docket 90-1, p. 9). Standard includes this entry in its assertion "these entries involve clear inefficiencies and redundancies and unrelated legal services, the fees are not compensable and any award must be reduced accordingly." (Docket 92, p. 10-11).

As noted above, Ms. Hackett was awarded $25,000 in attorney's fees by the Eighth Circuit. It is certainly reasonable when a lay person receives a

Form 1099 (an IRS disclosure by Standard that it paid miscellaneous funds to Ms. Hackett), that a taxpayer would consult with her attorney about that issue. This potential tax obligation is not collateral to, but rather integrally related to the appeal, the award of attorney's fees, and this case. There is nothing out of the ordinary or unreasonable in Mr. Leach claiming this time as part of his request for attorney's fees.

Finally, Standard objects to seven other entries which involve a "review" of the file. (Docket 92, p. 10). Defendant does not identify the entries to which this objection relates or how a "review" activity would be either inappropriate, redundant or a clear inefficiency. It is neither the duty nor the obligation of the court to ferret out the particular items to which a party may object. This case was contested, with numerous separate motions, objections and briefs. In conducting a review of Mr. Leach's billing statements, the court completed a thorough evaluation of each entry and the activities he describes. It is neither unreasonable nor inappropriate to include time in one's billing statements for reviewing an opposing parties' motions, affidavits, exhibits or briefs on the many issues in this litigation.

**MOTION FOR PREJUDGMENT INTEREST**

In support of the motion for prejudgment interest (Docket 86), the parties acknowledged the rate of prejudgment interest is controlled by

17

28 U.S.C. § 1961, as being .45 percent. (Docket 88, p. 2). The total amount of past due benefits owed and paid to plaintiff from 2005 to 2010 was $78,921.06. Id. Standard computed interest owed based on the rate of .45 percent for one year for a total due of $355.15. Id. Plaintiff, while not compounding interest, computed the interest due as of the date of each payment. Id. Calculating interest in this fashion results in total interest due of $845.44. Id. This calculation was performed by Donald Frankenfeld, a forensic economist. (Docket 87-1). By this calculation, Standard owes Hackett an additional $490.29 for prejudgment interest.[3]

    Standard resists the assessment of any prejudgment interest on the basis there was never a "judgment," that is "a court's final determination of the rights and obligations of the parties in [this] case." (Docket 92, p. 11). Contrary to defendant's interpretation, the court's order of July 7, 2010, (Docket 85) was and is the "court's final determination of the rights and obligations of the parties in [this] case." The order identified Ms. Hackett's right to receive disability benefits in the past, as well as in the future. (Docket 85). It would be inappropriate and inequitable to allow Standard to withhold those payments for nearly five years and then declare Ms. Hackett is not entitled to prejudgment interest. See Sheehan v. Guardian Life Insurance Company, 372 F.3d 962, 969 (8th Cir. 2004) ("The District Court's decision to

---

[3]Standard paid the $355.15 to plaintiff under Standard's calculation. (Docket 92, p. 11).

use § 1132(a)(3)(b) [other appropriate equitable relief] . . . was not an abuse of discretion."). Plaintiff is entitled to prejudgment interest for the entire five-year period, from the date each payment was originally due, as opposed to a single lump sum calculation as proposed by Standard.

## CONCLUSION

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion for prejudgment interest (Docket 86) is granted.

IT IS FURTHER ORDERED that plaintiff Kathleen M. Hackett is entitled to the sum of $490.29 as additional prejudgment interest from defendant Standard Insurance Company, over and above that which the defendant has already paid.

IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees and costs (Docket 89) is granted.

IT IS FURTHER ORDERED that plaintiff Kathleen M. Hackett is entitled to be paid attorney's fees for a total of 143.4 hours at $250 per hour for attorney's fees of $35,850, itemized expenses of $934.03, together with sales taxes of $2,151, for an award against the defendant Standard Insurance Company of $38,935.03.

Dated December 7, 2010.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE